LANMAN & KEMP-BARCLAY & CO. OF COLOMBIA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53169. Filed June 19, 1956.

*George J. Schaefer, Esq.*, for the petitioner.
*Charles M. Greenspan, Esq.*, for the respondent.

584

OPINION.

KERN, *Judge:* The sole issue for decision is whether the Colombian patrimony tax of $3,257.67 (and the 35 per cent surcharge thereon of $1,120.22), accrued by the petitioner in 1947, is an income tax or a tax in lieu of a tax on income within the meaning of section 131 [2] of the Internal Revenue Code of 1939 so as to qualify these amounts as foreign tax credits.

The petitioner bases its principal argument for the allowance of the credit on the contention that under the laws of the Republic of Colombia, the tax paid to that country was "a single tax, not divisible into separate parts," that it was "predominantly an income tax," and hence the entire amount paid qualifies for the credit under section 131 (a). It points to the following indicia as support for its position on the classification of the tax: Article 64 of the Colombian tax law imposing the patrimony tax states that the income, patrimony, and excess profits taxes "shall be considered one and indivisible"; the

---

[2] SEC. 131. TAXES OF FOREIGN COUNTRIES AND POSSESSIONS OF UNITED STATES.

(a) ALLOWANCE OF CREDIT.—If the taxpayer chooses to have the benefits of this section, the tax imposed by this chapter, except the tax imposed under section 102 and except the additional tax imposed for the taxable year under the provisions of section 127 (c) (3), shall be credited with:

(1) CITIZENS AND DOMESTIC CORPORATIONS.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(h) CREDIT FOR TAXES IN LIEU OF INCOME, ETC., TAXES.—For the purposes of this section and section 23 (c) (1), the term "income, war-profits, and excess-profits taxes" shall include a tax paid in lieu of a tax upon income, war-profits, or excess-profits otherwise generally imposed by any foreign country or by any possession of the United States.

judicial and administrative interpretations of the statute have construed the three levies as an indivisible whole, as only modalities or variations of the income tax; all information for the computation of the three-part tax and the surcharges thereon is submitted in a single report; the three levies are combined into one total which is reduced by the amount of an exemption before the surcharges are computed; and references in the Colombian law are to a single tax resulting from the combination of the three levies and the surcharges and not to separate taxes.

It is clear that under the law of the Republic of Colombia the patrimony tax is deemed to be a supplement to and indivisible from the income tax. It appears from the opinions of the Supreme Court of Justice that this characterization results not from mere administrative convenience in handling three taxes through one return, but from a fiscal policy based on the theory that the income tax, in order to be an equitable revenue system, requires a tax on capital to more fairly distribute the burdens among the nation's taxpayers and to prevent the state from being penalized if a property owner, through negligence or for some other reason, fails to realize the inherent productive potential of his property.

However, it is well settled that the determination of whether or not a foreign levy qualifies as an income tax within the meaning of section 131 (a) is to be made not upon the characterization of the foreign law, but under the criteria established by the internal revenue laws of the United States. *Biddle* v. *Commissioner*, 302 U. S. 573; *Keasbey & Mattison Co.* v. *Rothensies*, (C. A. 3, 1943) 133 F. 2d 894, certiorari denied 320 U. S. 739; *L. Helena Wilson*, 7 T.C. 1469. In other words, "the determinative question is whether the foreign tax is the substantial equivalent of an income tax as the term is understood in the United States." *Commissioner* v. *American Metal Co.*, (C. A. 2, 1955) 221 F. 2d 134.

The doctrine that only those increases in value of property which are actually realized by the owner constitute taxable income is basic to the income tax system of the United States. See *Commissioner* v. *Glenshaw Glass Co.*, 348 U. S. 426; *United States* v. *Kirby Lumber Co.*, 284 U. S. 1; and *Keasbey & Mattison Co.* v. *Rothensies, supra*, in which the court said: "The defined concept of income has been uniformly restricted to a gain realized or a profit derived from capital, labor, or both." The Colombian income tax separately considered provides for the taxation of net income and its substantial equivalence to our own income tax has been recognized by the respondent in the instant case. The patrimony tax separately considered is really a tax on property and results in a levy upon the net value of the taxpayer's assets which will include any unrealized appreciation of such

value. It is computed separately from the income tax from information respecting the taxpayer's assets and liabilities and does not give effect to items of income and expense. The petitioner's own expert witness testified that it is possible for a taxpayer to be liable for a patrimony tax in a year when the taxpayer has no revenue and is not liable for the income tax, and such testimony is in accord with the language of Article 64. The computation of the patrimony tax and the computation of the surcharge thereon are not so integrated with the income tax itself as to create any problem of allocating the total tax paid to Colombia. We are not bound by the classification of the patrimony tax under Colombian law as part of the income tax. *L. Helena Wilson, supra.* After careful consideration of the Colombian tax law, it is our conclusion that there is no substantial equivalent to the patrimony tax under our income tax system, and that this part of the Colombian tax is not an income tax within the meaning of section 131 (a).

The petitioner cites *Helvering* v. *Campbell*, (C. A. 4, 1944) 139 F. 2d 865, and Rev. Rul. 56–51 1956–1 C. B. 320, for the proposition that for the purpose of section 131 the classification of a single tax will be governed by its predominant character and argues that the tax in issue herein was predominantly an income tax. The authorities cited by the petitioner do not involve the allowance of a credit for a separately computed tax not based on income and are clearly distinguishable. Furthermore, the petitioner's classification of the Colombian tax as a single tax predominantly income in character depends on the characterization of the Colombian law which we have held above is not controlling.

The petitioner's final argument is that the patrimony tax is at least a tax in lieu of a tax on income within the meaning of section 131 (h). The legislative purpose in enacting this subsection in 1942 is expressed in the report of the Senate Committee on Finance, S. Rept. No. 1631, 77th Cong., 2d Sess., pp. 131–132, as follows:

Your committee believes further amendments should be made in section 131. Under that section as it now stands, a credit is allowed against United States tax for income, war profits or excess profits taxes paid or accrued to any foreign country or to any possession of the United States. In the interpretation of the term income tax, the Commissioner, the Board, and the courts have consistently adhered to a concept of income tax rather closely related to our own, and if such foreign tax was not imposed upon a basis corresponding approximately to net income it was not recognized as a basis for such credit. Thus if a foreign country in imposing income taxation authorized, for reasons growing out of the administrative difficulties of determining net income or taxable basis within that country, a United States domestic corporation doing business in, such country to pay a tax in lieu of such income tax but measured, for example, by gross income, gross sales or a number of units pro-

duced within the country, such tax has not heretofore been recognized as a basis for a credit. Your committee has deemed it desirable to extend the scope of this section. Accordingly, subsection (f) of section 160 provides that the term "income, war profits and excess profits taxes" shall, for the purposes of sections 131 and 23 (c) (1), include a tax paid by a domestic taxpayer in lieu of the tax upon income, war profits and excess profits taxes which would otherwise be imposed upon such taxpayer by any foreign country or by any possession of the United States. The limitation upon the amount of the credit will, of course, continue to apply, so that it will be allowed only if and to the extent the taxpayer has net income from sources within the foreign country or from sources without the United States, as the case may be.

Regulations 111, section 29.131–2, applicable to 1947, provide, in part, as follows:

For the purposes of section 131 and section 23 (c) (1) the term "income, war-profits, and excess-profits taxes" includes a tax imposed by statute or decree by a foreign country or by a possession of the United States if (*a*) such country or possession has in force a general income tax law, (*b*) the taxpayer claiming the credit would, in the absence of a specific provision applicable to such taxpayer, be subject to such general income tax, and (*c*) such general income tax is not imposed upon the taxpayer thus subject to such substituted tax. For example, the A Corporation does business in the X country, which imposes an income tax upon substantially a net income base. The ascertainment of net income, though not the determination of gross income, from sources in X country is found administratively difficult. The X country, by decree, provides that corporations circumstanced as was the A Corporation would, in lieu of the income tax at the rate of 20 percent otherwise payable, be subject to tax at the rate of 10 percent upon the amount of gross income from X country. In accordance with such decree, the A Corporation paid X country the sum of $25,000 in 1943 with respect to its tax liability to the X country for the year 1942. Such amount, subject to the applicable limitations, is available as a credit to the A Corporation as foreign income, war-profits, or excess-profits taxes against the United States tax liability for the year 1942. * * *

The Committee Report and the regulations indicate that the substituted tax must be related to income or to the taxpayer's productive output. There is nothing in either to indicate that a property tax that has no relation to the taxpayer's income or production was to be deemed such a substitute. The petitioner was subject to and paid the Colombian income tax in 1947, and has been granted a credit under section 131 (a) for the amount of such tax. The patrimony tax, which we have construed to be a property tax, was imposed not as a substitute for but as a supplement to the Colombian income tax and no deduction is allowable for the amount of such tax against the Colombian income tax. Therefore, the patrimony tax does not qualify as a tax in lieu of a tax on income within the meaning of section 131 (h). See *Compania Embotelladora Coca-Cola* v. *United States*, (Ct. Cl. 1956) 139 F. Supp. 953.

*Decision will be entered under Rule 50.*